## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | |
|---|---|
| **ROBERT WADLEY,**<br><br>                              Plaintiff,<br><br>v.<br><br>**WILLIAMS & FUDGE, INC.; CHAD MOBLEY;** and DOES 1-10,<br><br>                              Defendants. | Civil Case No.: 15-431<br><br><br>**FIRST AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.      In an attempt to bully Plaintiff Robert Wadley into paying a debt, Defendant Williams & Fudge, Inc., through its agent or employee Chad Mobley, went through the Facebook page of Plaintiff's business in an effort to identify Plaintiff's customers, and then contacted or attempted to contact several of those customers about Plaintiff Wadley's debt.

2.      Defendants also contacted or attempted to contact Plaintiff's parents, grandparents, and the wholly-unrelated individual who purchased Plaintiff's grandfather's home.

3.      This behavior was intended to, and did, disrupt Plaintiff's business, harm Plaintiff's reputation, and cause Plaintiff severe anxiety, emotional distress, and embarrassment.

4.      Defendants' behavior violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), Ark. Code Ann. § 17-24-501, *et seq.*; and the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*

5.      This extortionate behavior also violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

6.      Finally, Defendants actions constitute intentional infliction of emotional distress,

invasion of privacy (public disclosure of private facts, false light, and intrusion upon seclusion), tortious interference with business expectancy, negligence, and negligent training/supervision.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the FDCPA and RICO, which are a federal statutes. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over each Defendant because each Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, and was directed at, this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because each Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, and was directed at, this District. Venue is additionally proper because Plaintiff currently resides in this District.

## PARTIES

10.     Plaintiff Robert Wadley ("Plaintiff") is, and at all times mentioned herein was, a citizen and resident of the State of Arkansas. Plaintiff is, and at all times mentioned herein was, a "consumer" as defined by 15 U.S.C. § 1692(a).

11.     Defendant Williams & Fudge, Inc. ("Defendant W&F") is, and at all times mentioned herein was, a South Carolina corporation with its headquarters in Rock Hill, South Carolina.

12.     Defendant W&F conducts significant business in Arkansas and nationwide.

13.     Defendant W&F is, and at all times mentioned herein was, a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

14.     Defendant W&F is registered with the Arkansas Secretary of State and is being served via its registered agent for service of process:

> The Corporation Company
> 124 West Capitol Avenue, Suite 1900
> Little Rock, AR  72201

15.     Defendant Chad Mobley ("Defendant Chad") (collectively, "Defendants") is an individual who, during the relevant time period, acted on behalf of Defendant Williams & Fudge, Inc. in its attempt to collect a debt from Plaintiff.

16.     Defendant Chad is, and at all times mentioned herein was, a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

17.     Defendant Chad remains employed by Defendant W&F and, upon information and belief, resides in South Carolina.

18.     Does 1-10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## **FACTS**

19.     In or before August 2014, Defendants began efforts to collect on a student loan debt allegedly owed by Plaintiff Wadley, a veterinarian with his own veterinary practice.

20.     As part of these efforts, in or about August 2014, Defendant Chad, on behalf of Defendant W&F, attempted to contact at least three individuals who either were or appeared to be Plaintiff's veterinary clients.

21.     Upon information and belief, Defendants identified these individuals by searching through Plaintiff Wadley's business Facebook page.

22.     This belief is based on the fact that all of the individuals Defendants attempted to

contact had actively and publicly posted on or "liked" Plaintiff's Facebook page.

23.     Defendants told at least one of these individuals that they knew she was an "associate" of Plaintiff Wadley and to tell Plaintiff Wadley to call them.

24.     This individual told Defendants to stop calling her, and that if they needed to talk to Plaintiff Wadley, they could contact him directly.

25.     Nonetheless, Defendants called this individual multiple times.

26.     This individual informed Plaintiff Wadley of these calls, and shortly thereafter terminated their business relationship.

27.     Upon information and belief, Defendants' communication with this individual negatively impacted this individual's business relationship with Plaintiff Wadley.

28.     Defendants contacted or attempted to contact at least two other individuals who were (or appeared to be) clients of Plaintiff Wadley's veterinarian business.

29.     Defendants' behavior was designed to send a message: pay your debts or else we continue to contact your clients and destroy your business.

30.     Defendants could have had no other purpose for making these calls: it already knew all it needed to know to contact Plaintiff Wadley. Indeed, Defendants knew (and had previously called) Plaintiff's cellular telephone and two of his work phone numbers.

31.     A short time after being told about these calls to his clients, Plaintiff Wadley requested that Attorney Melanie Hollman speak with Defendant Chad in an effort to resolve the situation.

32.     During this conversation, Ms. Hollman asked that Defendants verify the debt as required, upon request, by 15 U.S.C. § 1692g(b).

33.     In response, Defendant Chad became hostile, vulgar, and verbally abusive toward

Ms. Hollman.

34.     When Ms. Hollman attempted to give Defendant Chad the address to which Defendants could mail the verification, Defendant Chad refused to listen, simply explaining that he could find the address through his "methods."

35.     Similarly, when Ms. Hollman sought to find out how Defendant Chad had identified Plaintiff Wadley's clients, Defendant Chad simply stated he had his "methods."

36.     Defendants' refusal to provide information, instead cryptically relying on their "methods," was designed to further increase the emotional toll and anxiety on Plaintiff Wadley in hopes that he would eventually break down and give Defendants what they sought. The more omnipresent Defendants made themselves appear, the more distressing their activities would be to Plaintiff.

37.     The calls to Plaintiff's clients were not the only calls made designed to cause Plaintiff anxiety and embarrassment. On multiple occasions, Defendants called Plaintiff's parents, grandparents, and even a complete stranger who had at one point purchased Plaintiff's grandfather's home.

38.     Defendants' conduct was designed and calculated to inflict maximum anxiety and emotional distress on Plaintiff. Defendants knew they were calling Plaintiff's clients and family members, and they did so with the intent that those clients and family members would then relay their message to Plaintiff Wadley at unexpected or inopportune times. This was intended to cause anxiety, embarrassment, and potentially interfere with his business and personal relationships, and it did just that.

39.     As a result of Defendants' conduct, Plaintiff's reputation was harmed.

40.     As a result of Defendants' conduct, Plaintiff's business relationships were

negatively impacted.

41.     As a result of Defendant's conduct, Plaintiff suffered anxiety, stress, fear, severe emotional distress, and severe embarrassment.

42.     As one example of such severe anxiety and distress, Defendants refusal to disclose how it identified Plaintiff's clients – stating only that they had their "methods" – was intended to cause and did cause Plaintiff to reasonably believe and fear that Defendants had somehow accessed his files and/or computer system, either physically or electronically, thus potentially compromising all of his client's private information, as well as his business' financial information.

43.     As a result of Defendants' conduct, and as set forth below, Plaintiff is entitled to actual damages, treble damages, punitive damages, and attorneys' fees.

44.     Defendant Chad is directly liable for all of the causes of action set forth below. Defendant W&F, as a debt collection agency that employed Defendant Chad in its core business, is directly and/or vicariously liable for all of the causes of action set forth below.

## FIRST CAUSE OF ACTION
### Violations of the FDCPA, 15 U.S.C. § 1692c(b)

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     By calling Plaintiff's business clients and demanding that those clients relay Defendants' message to Plaintiff, Defendant violated 15 U.S.C. §1692c(b) which provides that, without the prior consent of the consumer given directly to the debt collector, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer.

47.     Plaintiff is therefore entitled to actual damages, statutory damages, and attorneys' fees.

## SECOND CAUSE OF ACTION
### Violations of the Arkansas Fair Debt Collection Practices Act, Ark. Code Ann. § 17-24-504

48.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.     By calling Plaintiff's business clients and demanding that those clients relay Defendants' message to Plaintiff, Defendants violated Ark. Code Ann. § 17-24-504(b) which provides that "without the prior consent of the consumer given directly to the debt collector … a debt collector may not communicate in connection with the collection of a debt with a person other than the consumer[.]"

50.     Plaintiff is therefore entitled to actual damages, statutory damages, and attorneys' fees.

## THIRD CAUSE OF ACTION
### Violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107(a)(10).

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Ark. Code Ann. § 4-88-107(a)(10) makes it unlawful to "[e]ngag[e] in any … unconscionable, false, or deceptive act or practice in business, commerce, or trade."

53.     Defendants' conduct as described above is unconscionable and deceptive.

54.     Plaintiff is therefore entitled to actual damages and attorneys' fees pursuant to Ark. Code Ann. § 4-88-113(f).

## FOURTH CAUSE OF ACTION
### Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

55.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.     Defendants' conduct violated 18 U.S.C. § 891, *et seq.* because Defendants used "extortionate means" to collect an extension of credit or to punish a person for non-repayment thereof.

57.     "Extortionate means" is defined as "the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of another person." 18 U.S.C. § 891(7).

58.     18 U.S.C. § 894 prohibits the use of any extortionate means "to collect or attempt to collect any extension of credit, or to punish any person for the non-repayment thereof."

59.     Defendants' conduct in intentionally contacting Plaintiff's customers constituted criminal harassing communications under Ark. Code Ann. § 5-71-209 because Defendants communicated with persons in a manner likely to harass, annoy, or cause alarm to Plaintiff.

60.     Defendants' conduct also constituted criminal harassment under Ark. Code Ann. § 5-71-208, because Defendants engaged in conduct that alarmed or seriously annoyed Plaintiff and served no legitimate purpose.

61.     Therefore, Defendants attempted to collect an extension of credit, or punish Plaintiff, by causing harm to his reputation and business through criminal means.

62.     This violation constitutes a "predicate act." 18 U.S.C. § 1961(1).

63.     Defendants also attempted to "obstruct, delay, or affect commerce" by its attempted extortion, in violation of 18 U.S.C. § 1951(a), which states that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do … shall be fined under this title or imprisoned not more than twenty years, or both."

64.     "Extortion" in this context is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

65.     "Commerce" is defined as "all commerce between any point in a State … and any point outside thereof."

66.     Defendants contacted Plaintiff's clients in order to make Plaintiff pay his debt out of fear of the continued impact on his business.

67.     Defendants reside in South Carolina; Plaintiff resides in Arkansas.

68.     Defendants thus "attempt[ed]" to "affect commerce" through extortionate means.

69.     This violation constitutes a predicate act. 18 U.S.C. § 1961(1).

70.     Therefore, Defendants engaged in a "pattern of racketeering activity" as defined at 18 U.S.C. § 1962(5), in violation of 18 U.S.C. § 1962(a).

71.     Plaintiff was injured as a result of Defendants' violation of 18 U.S.C. § 1962(a).

72.     Plaintiff is therefore entitled to his actual damages, treble damages, and attorney's fees.

73.     Plaintiff is also entitled to punitive damages.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress/Outrage

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     Defendants conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

76.     Defendants' conduct was designed to cause emotional distress, embarrassment, and anxiety.

77.     Indeed, Defendants' attempts to collect the debt by hounding Plaintiff's innocent family members and third-party clients could only work through the implied threat that if Plaintiff did not pay his debt, Defendants would continue to contact Plaintiff's clients and family,

potentially destroying his business and harming his personal life. This simply cannot be tolerated in a civilized community.

78.     As a result of Defendants' conduct, Plaintiff became angry, anxious, and paranoid. Plaintiff feared that Defendants sought to ruin his reputation, and would continue to call his clients until Plaintiff acquiesced to their demands.

79.     Plaintiff had no idea how customer information was accessed, and had no idea how many of his clients were called.

80.     Defendants' cryptic refusal to explain how it had located Plaintiff's clients was intended to exacerbate this distress. It was designed to make (and did make) Plaintiff reasonably fear that Defendants had intruded – physically or electronically – into his electronic and physical databases, thus potentially compromising sensitive client information and sensitive financial information (which could destroy his business, even if contacting his clients did not).

81.     Plaintiff truly believed and feared that his livelihood was at stake, and was severely distraught as a result.

82.     Accordingly, as a direct and intended result of Defendants' Conduct, Plaintiff suffered severe emotional distress.

83.     Plaintiff is therefore entitled to actual damages and punitive damages.

## SIXTH CAUSE OF ACTION
### Invasion of Privacy/Public Disclosure of Private Facts

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     Plaintiff's financial situation, including debts in default or past due, is private and not of legitimate concern to the public.

86.     Defendants' disclosure of Plaintiff's financial situation to Plaintiff's clients, parents, grandparents, and the individual who purchased Plaintiff's grandfather's home, constituted highly objectionable publicity.

87.     As a result of Defendants' conduct, Plaintiff is entitled to actual and punitive damages.

## SEVENTH CAUSE OF ACTION
### Invasion of Privacy/False Light

88.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89.     Defendants contacted Plaintiff's clients and family about Plaintiff's debt, despite being fully aware of how to contact Plaintiff directly.

90.     Defendants' unnecessary contacting of third-parties falsely portrayed Plaintiff as a "deadbeat" actively seeking to avoid his debts and any communication with Defendants.

91.     This "false light" would be highly offensive to a reasonable person.

92.     As a result of Defendants' conduct, Plaintiff is entitled to actual and punitive damages.

## EIGHTH CAUSE OF ACTION
### Invasion of Privacy/Intrusion Upon Seclusion

93.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

94.     By contacting Plaintiff's clients, family, and other third-parties, Defendants intruded upon Plaintiff's seclusion.

95.     Each call Defendants placed to Plaintiff's clients, family, and other third-parties was an effort to have those third-parties relay Defendants' message to Plaintiff at unexpected and intrusive times, such as at work, at home, and at family gatherings.

96.     Put simply, Defendants sought to hound Plaintiff by enlisting third-parties with whom Plaintiff had personal or business relationships as Defendants' unwitting agents in its abusive and harassing practices.

97.     Practically speaking, Defendants intrusions are no different than if Defendants themselves had shown up at Plaintiff's office, home, or family gatherings and told him to pay his debt.

98.     Defendants cannot avoid liability for intruding on Plaintiff's seclusion simply because it used or attempted to use third-parties to accomplish these intrusions.

99.     In addition, Defendants contacting of Plaintiff's client's intruded upon Plaintiff's private affairs.

100.    Plaintiff had private, confidential, and business relationships with his clients. His business and these relationships constitute "private affairs."

101.    Defendants intruded upon these "private affairs" by calling these clients with no legitimate purpose other than to hound Plaintiff into paying his debt.

102.    All of these intrusions would be highly offensive to a reasonable person.

103.    As a result of Defendants' conduct, Plaintiff is entitled to actual and punitive damages.

## NINTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship

104.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

105.    Separate and apart from Defendants' FDCPA violations, Defendants tortuously interfered with Plaintiff's business expectancies.

106.    Defendants knew that it was contacting Plaintiff Wadley's business clients with whom Plaintiff Wadley had a business expectancy.

107.    Defendants intentionally interfered with this business expectancy by contacting these clients and presenting Plaintiff Wadley in a negative light for reasons that were of no concern to these clients, and also by placing these clients in a difficult and embarrassing situation were they to continue to deal with Plaintiff Wadley.

108.    As a result, Plaintiff Wadley's business relationships were negatively impacted.

109.    As a result of Defendants' conduct, Plaintiff is entitled to actual damages and punitive damages.

## TENTH CAUSE OF ACTION
### Negligence

110.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

111.    Defendants owed Plaintiff a duty of reasonable care in their debt collection activities.

112.    By contacting third-parties in an effort to harass Plaintiff into paying his debt, Defendants breached this duty of care.

113.    Defendants conduct actually and proximately caused Plaintiff to suffer damages.

114.    As a result, Plaintiff is entitled to actual damages and punitive damages.

## ELEVENTH CAUSE OF ACTION
### Negligent Supervision/Training

115.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

116.    Defendant W&F had a duty to supervise its employees.

117.    Defendant W&F knew or, through the exercise of ordinary care, should have known that Defendant Chad's conduct would subject third-parties, such as Plaintiff, to an unreasonable risk of harm.

118.    A simple audit of Defendant Chad's collection activities and calls would have revealed that Defendant Chad was routinely abusive to debtors and third-parties and was contacting third-parties without the debtor's consent.

119.    Upon information and belief, Defendant W&F knew and implicitly or explicitly approved of Defendant Chad's conduct.

120.    Upon information and belief, Defendant W&F's bonus structure incentivized such behavior because it awards successful debt collection by any means necessary.

121.    Defendant's failure to supervise Defendant Chad proximately and actually caused Plaintiff to suffer emotional distress and damaged his business and reputation.

122.    The harm to a debtor of un- or negligently-supervised debt collection activities was foreseeable.

123.    Furthermore, if Defendant Chad had been properly trained, he would not have taken the actions he took.

124.    Defendant W&F's failure to train Defendant Chad proximately and actually caused Plaintiff to suffer emotional distress and damaged his business and reputation.

125.    The harm to a debtor of allowing un- or negligently-trained debt collectors to attempt to collect debts was foreseeable.

126.    As a result, Plaintiff is entitled to actual damages and punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Robert Wadley prays for the following relief:

A.    An order declaring that Defendants' actions, as set out above, violate each and every act and law set out above;

B.    An award of injunctive and other equitable relief;

C.      An award statutory damages;

D.      An award of actual damages;

E.      An award of punitive damages;

F.      Treble damages;

G.      An award of reasonable attorneys' fees and costs; and

H.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** August 10, 2015                         */s/ Jeremy M. Glapion_____*
                                                   Jeremy M. Glapion
                                                   **THE GLAPION LAW FIRM, LLC**
                                                   1704 Maxwell Drive, Suite 102
                                                   Wall, New Jersey 07719
                                                   Tel: 732.455.9737
                                                   Fax: 732.709.5150
                                                   jmg@glapionlaw.com

                                                   J. R. Andrews
                                                   **ANDREWS LAW FIRM**
                                                   2014 Martha Drive
                                                   Little Rock, AR  72212
                                                   Tel: 501-680-3634
                                                   jrandrewsatty@yahoo.com